UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**William Mateo**

    v.

**Warden, Federal Correctional Institution, Berlin, New Hampshire**

Case No. 20-cv-1012-PB
Opinion 2021 DNH 089

**MEMORANDUM AND ORDER**

William Mateo, an inmate at the Federal Correctional Institution Berlin ("FCI Berlin"), has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241. In the petition, Mateo challenges his confinement on the ground that his medical conditions place him at a high risk of severe illness or death from COVID-19. Before me is Mateo's request for release on bail pending the resolution of his petition, to which the Warden objects. Because Mateo has not demonstrated that he is likely to prevail on the merits of his petition, I deny his motion for bail.

    **I.   BACKGROUND**

In 2017, Mateo pleaded guilty to one count of discharging a firearm in the course of committing a bank robbery, a class A felony, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). The United States District Court for the Southern District of New York sentenced him to ten years of imprisonment. See United States v. Mateo, No. 7:17-cr-00305-NSR-1, Doc. No. 25 (S.D.N.Y.

Sept. 7, 2017) ("Mateo I").  Mateo is presently serving his sentence at FCI Berlin, a federal Bureau of Prisons ("BOP") facility located in New Hampshire.

In June 2020, Mateo, represented by counsel, filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c) in the sentencing court.  See Mateo I, Doc. No. 32.  The sentencing court held a hearing and denied the motion the following month.  The court explained in a minute entry that Mateo "did not demonstrate extraordinary and compelling reasons showing that [he] is at high risk to contract COVID-19, and that [his] danger to the community and the § 3553(a) factors outweigh [any reasons] warranting his release."  Mateo I, July 17, 2020 Minute Entry.  On May 4, 2021, he renewed his motion for compassionate release in the sentencing court, which remains pending as of May 21.  See Mateo I, Doc. No. 37.

Mateo filed this petition under 28 U.S.C. § 2241(c)(3) in October 2020.  He alleges that he has several conditions that render him vulnerable to serious illness or death if he were to contract COVID-19, including high blood pressure, high blood cholesterol, pre-diabetes, latent tuberculosis, and a congenial birth defect of the brain.  He appears to seek release from prison either pursuant to a grant of compassionate release, a sentence reduction, or an order directing that the remainder of his sentence be served in home confinement.

2

The BOP has developed a multi-point plan to address the COVID-19 pandemic, which has been implemented at FCI Berlin. Under the plan, the BOP has established quarantine and isolation protocols, screening and sanitization procedures, social distancing during visits, daily temperature checks, and mask wearing for staff and inmates, among other measures. See, e.g., Ex. 1 to Gov't's Objection to Def.'s Request for Preliminary Relief, Doc. No. 9-1. As of May 21, 2021, there were zero active cases of COVID-19 among the inmates and four active cases among the staff at FCI Berlin.[1] At that time, 353 inmates housed at this facility were fully vaccinated against COVID-19, out of a total of 839 inmates.[2] In a recent letter addressed to the sentencing court, Mateo represented that he is fully vaccinated. See Mateo I, Doc. No. 38-1 at 1.

## II.  STANDARD OF REVIEW

"[A] district court entertaining a petition for habeas corpus has inherent power to release the petitioner pending determination of the merits." Woodcock v. Donnelly, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam); see Mapp v. Reno, 241 F.3d 221, 226 (2d Cir. 2001) (collecting cases). A habeas petitioner

---

[1] *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/index.jsp (visited May 21, 2021).

[2] *COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/index.jsp (visited May 21, 2021).

3

may be released on bail if he demonstrates either (1) a clear case on the law and facts, or (2) a substantial claim of constitutional error and exceptional circumstances warranting immediate release. Glynn v. Donnelly, 470 F.2d 95, 98 (1st Cir. 1972); see Gomes v. US Dep't of Homeland Sec., 460 F. Supp. 3d 132, 144 (D.N.H. 2020); Bader v. Coplan, 2003 DNH 015, 2003 WL 163171, at *4 (D.N.H. Jan. 23, 2003). To demonstrate a substantial claim of constitutional error, a petitioner must show that he is likely to succeed on the merits of his habeas petition. Gomes, 460 F. Supp. 3d at 144 (citing, among others, Mapp, 241 F.3d at 230).

If the petitioner satisfies either prong of the Glynn test, he is entitled to a bail hearing. See id. At the bail hearing, a federal prisoner who is challenging his confinement in a post-conviction motion must present clear and convincing evidence that he would not be a danger to the public or a flight risk if released. See United States v. Bayko, 774 F.2d 516, 520 (1st Cir. 1985) (recognizing that under the statute governing bail pending direct appeal from a federal conviction, 18 U.S.C. § 3143(b), a defendant must prove by clear and convincing evidence that he is not dangerous and is unlikely to flee); United States v. Dade, 959 F.3d 1136, 1139 (9th Cir. 2020) ("[B]ecause the standards applicable to collateral review are stricter than on direct appeal, a federal defendant who would

4

not be entitled to bail pending direct appeal under the terms of § 3143(b) is, for that reason alone, not entitled to bail pending resolution of his or her § 2255 proceedings."); Cherek v. United States, 767 F.2d 335, 337–38 (7th Cir. 1985) (same).

### III. ANALYSIS

Mateo seeks release from custody under § 2241 principally on the ground that his confinement violates the Eight Amendment's prohibition on cruel and unusual punishment because it exposes him to the threat of serious illness or death if he were to contract COVID-19.  Assuming, without deciding, that this type of claim can be brought under § 2241,[3] Mateo has not carried his burden of demonstrating that he should be released on bail during the pendency of his petition.

Several district courts in this circuit have held that the threat that COVID-19 poses to incarcerated individuals can constitute exceptional circumstances under the Glynn test.  See Yanes v. Martin, 464 F. Supp. 3d 467, 469, 474 (D.R.I. 2020);

---

[3] There is a substantial question whether the relief Mateo seeks is properly sought by means of a habeas petition under § 2241. Compare Rice v. Gonzalez, 985 F.3d 1069, 1070 (5th Cir. 2021) (holding that habeas relief is not available because the fact that the petitioner "might more likely be exposed to COVID-19 during confinement, and that he may have certain common underlying health conditions, taken together do not impugn the underlying legal basis for the fact or duration of his confinement"), with Wilson v. Williams, 961 F.3d 829, 832-33 (6th Cir. 2020) (holding that § 2241 was the proper vehicle when prisoners sought "release from custody to limit their exposure to the COVID-19 virus").

5

Gomes, 460 F. Supp. 3d at 144. I need not decide whether the current threat of infection to Mateo at FCI Berlin satisfies the exceptional circumstances requirement.[4] Even if it does, he has not demonstrated a likelihood of success on the merits of his claims, which dooms his request for bail.

To the extent Mateo seeks a compassionate release, this court is without authority to grant his request. Motions for compassionate release under 18 U.S.C. § 3582(c) must be filed in the sentencing court, which in this case is the Southern District of New York. See United States v. Shkambi, 993 F.3d 388, 390 (5th Cir. 2021) ("It is plain from the text of § 3582 that such a 'motion' shall be filed . . . in the same docket that contains the prisoner's final judgment."); Braswell v. Gallegos, 82 F. App'x 633, 635 (10th Cir. 2003) ("Because a motion filed under § 3582 requests modification of a sentence, it follows that such a motion must be filed in the district court which imposed the sentence."). Indeed, Mateo appears to be aware of this requirement. He unsuccessfully moved for a compassionate release in the sentencing court last summer and

---

[4] Although I agree that COVID-19 can present a substantial risk of serious harm to the health of individuals, vaccines "are highly effective at protecting vaccinated people against symptomatic and severe COVID-19." CDC, "Guidance for Fully Vaccinated People," May 13, 2021, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html. Given that Mateo is now fully vaccinated, his risk is significantly reduced.

recently renewed his motion in that court.  Therefore, § 3582 cannot support his bail request.

To the extent Mateo seeks release from prison on the ground that his confinement violates the Eight Amendment, he has not demonstrated a substantial claim of constitutional error.  See Glynn, 470 F.2d at 98.  The government has a constitutional obligation to "provide humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  As part of this duty, prison officials must "take reasonable measures to guarantee" the health and safety of inmates.  Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)).  For prisoners incarcerated following a conviction, the government's obligation arises out of the Eighth Amendment's prohibition on cruel and unusual punishment.  Id.; Giroux v. Somerset Cnty., 178 F.3d 28, 31 (1st Cir. 1999).[5]

Conditions-of-confinement claims are assessed under the "deliberate indifference" framework.  Farmer, 511 U.S. at 828. This standard has both an objective and a subjective prong.  Id. at 834.  The objective prong requires the prisoner to "show that he is incarcerated under conditions posing a substantial risk of

---

[5] Mateo also alleges that the conditions of his confinement violate his constitutional due process rights.  The due process clause, however, provides an avenue for pre-trial detainees to challenge unconstitutional conditions of confinement.  See Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005).

7

serious harm." Id. (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The subjective prong requires a showing that prison officials acted with "deliberate indifference" to that risk, id., meaning that they had "actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented that harm." Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018) (internal quotation marks and citation omitted); see Farmer, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). The requisite mental state is akin to criminal recklessness, "characterized by obduracy and wantonness, not inadvertence or error in good faith." Leite v. Bergeron, 911 F.3d 47, 52-53 (1st Cir. 2018) (internal quotation marks omitted); see Giroux, 178 F.3d at 32.

Assuming, without deciding, that Mateo could satisfy the objective prong of his Eight Amendment claim, which is doubtful, see supra note 4, he has not demonstrated a likelihood that the Warden has been obdurate, wonton, or reckless with respect to the risk that COVID-19 presents to those detained at FCI Berlin or has otherwise failed to take reasonable steps aimed at preventing or mitigating that risk. At this facility, the BOP has implemented a number of measures and policies in response to the COVID-19 pandemic, including quarantine and isolation

protocols, screening and sanitization procedures, social distancing, and mask wearing. These steps are similar to the steps taken by the officials in Williams v. Wilson, where the Sixth Circuit held that federal prisoners housed at FCI Elkton in Ohio had not shown a likelihood of success on the merits of their Eight Amendment claims arising out of the risk of harm from COVID-19, because they had not satisfied the subjective component of the deliberate indifference test. See 961 F.3d 829, 841, 844 (6th Cir. 2020). By the same token, it is unlikely that Mateo could show that the BOP's response to the pandemic has been so deficient as to amount to criminal recklessness.

Moreover, the BOP has made vaccines against COVID-19 available to the inmates housed at FCI Berlin, an opportunity that Mateo has prudently seized. In fact, more than 40% of the inmate population there is fully inoculated. And at this time, there are no active cases of COVID-19 among the inmates at this facility.[6] These facts further demonstrate the reasonableness of the BOP's handling of the risk from COVID-19 at FCI Berlin.

---

[6] Mateo's renewed motion for compassionate release filed in the sentencing court referenced a significant outbreak of COVID-19 among the inmates and staff at FCI Berlin that occurred in April 2021. See Mateo I, Doc. No. 37 at 2-3. The fact that an outbreak has occurred, without more, is insufficient to establish that the BOP was deliberately indifferent to the risk of harm that COVID-19 poses. See Farmer, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to

On this record, Mateo has not established that he is likely to succeed on his claim that the Warden has been deliberately indifferent to the risk that the virus poses to inmates like him.  Accordingly, he has not met his burden of showing a substantial claim of a constitutional error, a defect that is fatal to his request for bail.

## IV.  CONCLUSION

For the foregoing reasons, Mateo's motion for bail is denied.  The Warden is directed to respond to the petition within thirty (30) days of the date of this order, by filing either a motion for summary judgment or a notice to the court stating that an evidentiary hearing is necessary.  If a summary judgment motion is filed, I direct the clerk of court to send a copy of the court's Notice Regarding Summary Judgment to Mateo, for his use in filing a properly supported response.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

May 24, 2021

cc:  William Mateo, pro se
     Seth Aframe, Esq.

---

inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."); Wilson, 961 F.3d at 842-43 (rejecting the contention that the BOP "was deliberately indifferent to petitioners' health and safety because [its] actions have been ineffective at preventing the spread of COVID-19").